IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00420-LTB-MEH

LUDVIK ELECTRIC COMPANY,

      Plaintiff,

v.

EIGHTH DISTRICT ELECTRICAL PENSION FUND and
THE BOARD OF TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION FUND,

      Defendants.

---

## RECOMMENDATION ON MOTION TO AMEND

---

Pending before the Court is Plaintiff's Motion for Leave to File Amended Complaint [filed August 12, 2008; docket #17]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, this matter has been referred to this Court for recommendation [docket #30]. The matter is fully briefed, and oral argument would not assist the Court in its consideration of this matter. For the reasons set forth below, the Court recommends that the District Court **deny** Plaintiff's motion.

## BACKGROUND

Plaintiff initiated this lawsuit claiming that an arbitrator's decision and award is erroneous as a matter of law and asking the Court to vacate or modify such award pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1401(b)(2). Specifically, Plaintiff claims that the arbitrator erred in upholding the Defendant Pension Fund's assessment of partial withdrawal liability in the amount of $6,514,183.55 based upon Plaintiff's alleged partial withdrawal from the Fund stemming from the International Brotherhood of Electrical Workers ("IBEW") Local 68's decertification as representative of Plaintiff's electrician employees

on December 2, 2003.  Docket #1 at 6.  Defendants answered the complaint and counterclaimed requesting that the Court affirm the arbitrator's award.  *See* docket #2.  The parties jointly submitted the administrative record for review on August 20, 2008.  Docket #23.

## I.    Proposed Amendments

According to the Plaintiff, the proposed amended complaint adds four claims for relief that relate to (i) the Pension Fund's expectation of payments to compensate its losses (during the relevant time period) incurred as a result of fraudulent activity, and (ii) Plaintiff's entitlement to credit for those recoveries against the amount the Pension Fund is entitled to collect against any arbitration award that may be confirmed in this action.  Plaintiff summarizes the relevant allegations and claims as follows:

1.    Paragraphs 21 through 24 restate the claim for relief to modify or vacate the arbitration award that was presented in the initial complaint. The format is modified slightly, but the substance of the claim for relief is unchanged.

2.    Paragraphs 25 through 38 set forth the factual allegations relating to the new claims for relief and, more particularly, the basis for Plaintiff's assertion that the Pension Fund is not entitled to collect or execute on the full amount of the arbitration award because it would result in a windfall or double recovery for the Pension Fund. Those allegations are summarized as follows:

During an unknown period prior to October 25, 2000, the Pension Fund engaged Capital Consultants LLC ("CCL"), an Oregon investment management company, and placed millions of dollars of the Pension Fund's assets with CCL to be invested. CCL engaged in fraudulent conduct with respect to its investment practices, resulting in millions of dollars of losses to the Pension Fund.  In 2000, the Securities and Exchange Commission filed an action in the United States District Court for the District of Oregon

against CCL, alleging fraud and aiding and abetting fraud. The court subsequently placed CCL into receivership. *See SEC v. Capital Consultants, LLC*, No. CV00-1290 (D. Or. Sept. 21, 2000). The Pension Fund has previously received payments from the receivership and expects to receive additional payments when the receivership is closed. As of August 1, 2008, the receivership was not yet closed.

In addition, the Pension Fund brought civil actions against certain Pension Fund trustees, CCL, and others seeking reimbursement for investment losses arising from alleged fraud. The Pension Fund has received some settlement payments with respect to those claims, but has at least one claim remaining for which it expects to receive payment in the future (the known claim being against CCL's insurer, which is in an insolvency proceeding). The Pension Fund suffered millions of dollars of losses as a result of the fraud, negligence, and other improprieties perpetrated by CCL and others ("CCL Losses").

Withdrawal liability under the MPPAA identifies an employer's proportionate share of the plan's "unfunded vested benefits" calculated as the difference between the present value of vested benefits and the current value of the plan's assets. Thus, Plaintiff's withdrawal liability is calculated as a mathematical function of the market value of the Pension Fund such that the withdrawal liability will decrease as the market value increases. The market value upon which Plaintiff's withdrawal liability was calculated does not incorporate the recoveries the Fund expects to receive in the future. As a result, the withdrawal liability assessed against Plaintiff is greater than necessary to compensate the Pension Fund for its unfunded vested benefits under MPPAA upon the Fund's receipt of further payments for the CCL losses and will result in a windfall

or double recovery to the Pension Fund.

*See* docket #17 at 2-3.

      3.      Paragraphs 39 through 45 assert the additional claims for (i) setoff, (ii) unjust enrichment and disgorgement, (iii) constructive trust and equitable lien, and (iv) subrogation.

## II.      Briefing on the Motion

      Plaintiff contends that its motion to amend is timely and not made in bad faith[1] since it "only recently" confirmed in a review of the Oregon case that the Pension Fund expects to receive additional payments. Docket #17 at 4. Moreover, Plaintiff asserts that this Court is an appropriate venue to determine Plaintiff's right to receive credit for any additional recoveries since the Court "will have jurisdiction over any collection efforts" that may be undertaken by Defendants.[2] *Id.* Finally, Plaintiff claims that the proposed amendments are not statutorily subject to arbitration since they "do not address in any fashion the amount of withdrawal liability," but rather, "the amount that is properly to be setoff against that liability (if any)." Docket #28 at 6.

      Defendants counter that Plaintiff's request for amendment is unduly delayed, unduly prejudicial, made in bad faith, and futile. Defendants argue that, while the motion may have been timely filed pursuant to the Scheduling Order in this matter, the facts underlying the proposed amendments were known to the Plaintiff well in advance of the arbitration. Docket #22 at 3. Moreover, Defendants claim undue prejudice in that the new allegations are fact specific, took place

---

[1]Plaintiff's repeated assertions in its reply brief that this Court has already "perceived" no bad faith, prejudice, or futility of the amendments are misplaced. Plaintiff relies for its assertions on this Court's order granting a motion to extend the dispositive motions deadline pending a ruling on the within motion to amend. Clearly, any findings made in that order pertain <u>only</u> to the parties' arguments brought in favor of or against the motion to extend the dispositive motions deadline. In fact, the within motion to amend was not before this Court at the time the order granting an extension was issued.

[2]This is not necessarily true, and the Plaintiff provides no support for such assertion.

four-to-eight years ago, have already been heavily litigated, and would require significant discovery. *Id.* at 4. Defendants contend that the proposed amendments are made in bad faith, since any challenges to the computation of withdrawal liability could and should have been submitted to the arbitrator. *Id.* at 6. Finally, Defendants assert that the proposed amendments are futile, arguing that the claims are facially insufficient, inadequate if made under ERISA, and preempted if brought under the common law. *Id.* at 9.

**DISCUSSION**

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a) (2008). Nevertheless, denying leave to amend is proper if the proposed amendments are unduly delayed, unduly prejudicial, futile, or sought in bad faith. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## I.   Plaintiff's Proposed Amendments are Unduly Delayed

In the Tenth Circuit, untimeliness alone may be a sufficient basis for denying a party leave to amend. *See Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 892 F.2d 1182, 1185 (10th Cir. 1990). Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *Frank,* 3 F.3d at 1365-66; *see also Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir. 1994) ("[t]he unexplained delay alone justifies the district court's discretionary decision."); *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect. For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.") (cases omitted). In fact, where the

party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial. *Las Vegas Ice & Cold Storage Co.*, 892 F.2d at 1185 (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)).

Here, Plaintiff seeks to add claims based upon the "fact" that the Pension Fund expects to receive future recoveries from its CCL losses. However, the record reflects that Plaintiff knew or should have known about the Fund's expectations for future recoveries well before it filed this litigation and even before (or during, depending upon when it received the records) the arbitration of this matter.[3] The Administrative Record filed jointly by the parties reflects the following:

(1) Defendant Pension Fund's "Notes to Financial Statements" for years ended March 31, 2001 and 2000 explain the litigation involving Capital Consultants, LLC, the receivership of Capital Consultants by the Department of Labor and the Securities and Exchange Commission, the necessary reduction of the value of the Fund as a result, and the claims for losses and expected repayment of $71,836 from certain trustees. *See* Admn. Record at 396, 399. The Notes state, "It is probable there will be future, positive adjustments necessary as additional information becomes available from the receiver." *Id.* at 396.

(2) Defendant's "Notes to Financial Statements" for years ended March 31, 2002 and 2001 explain in detail the pending litigation involving Capital Consultants, LLC, the receivership of Capital Consultants by the Department of Labor and the Securities and Exchange Commission, a settlement reached that provided reimbursement to the Plan of $4,500,000, and another settlement reached and other recoveries made that would provide repayment for approximately $7,500,000.

---

[3]Defendant asserts that Plaintiff knew about the expected future recoveries before the arbitration. Docket #22 at 2. However, Defendant provides no information regarding when and how Plaintiff received Defendant's financial statements contained in the Administrative Record.

*See* Admn. Record at 437, 440. The Notes state, "Substantial additional amounts are anticipated from the court-appointed receiver from liquidation of assets held by Capital Consultants, LLC." *Id.* at 440.

(3)     Defendant's "Notes to Financial Statements" for years ended March 31, 2003 and 2002 explain in detail the pending litigation involving Capital Consultants, LLC, a settlement reached with the class, trustees and Department of Labor that provided payment to the Plan of $4,500,000, and details of the known amounts of recovery totaling $22,163,672. *See* Admn. Record at 464, 465. The Notes state, "The Plan received $14,273,611 in recoveries in August 2003 and will receive additional amounts when the receivership terminates." *Id.* at 464.

(4)     Defendant's "Notes to Financial Statements" for years ended March 31, 2004 and 2003 explain in detail the pending litigation involving Capital Consultants, LLC, the nonpayment of the settlement reached with the class, trustees and Department of Labor totaling approximately $4,500,000, and details of the known amounts of recovery totaling $22,163,672. *See* Admn. Record at 498. The Notes state, "The Plan received $23,909,107 in recoveries during the year ended March 31, 2004 from the receivership and service providers and will receive a final payment of any remaining amount when the receivership closes." *Id.* at 498.

In its motion, Plaintiff argues that it "only recently" confirmed, by reviewing the litigation file involving Capital Consultants, LLC, that the receivership has not closed and that, therefore, the Plan expects future recoveries that should be considered in a setoff to any award in this case. However, Plaintiff knew or should have known that the Plan was expecting future recoveries at the time it received (and, undoubtedly, reviewed) the above-cited documents, either at or during the arbitration. Plaintiff provides no explanation for its failure to review CCL's litigation file either before it filed this litigation or at the time it received the documents cited above.

According to the Complaint, Plaintiff demanded arbitration on April 12, 2007 and the arbitrator's decision was issued on January 31, 2008. Plaintiff then filed this litigation on February 28, 2008. Neither of the parties have informed the Court of the actual date of the arbitration or the time during which the parties exchanged information in anticipation of the arbitration. Nevertheless, considering the timing of the demand and decision, the Court reasonably assumes that the preparation for arbitration and actual arbitration proceeding occurred approximately one year ago. Therefore, the Plaintiff knew or should have known about the Plan's expected future recoveries *at least* one year ago, which is well before Plaintiff filed its Complaint in this action. In light of *Las Vegas Ice & Cold Storage Co.* and its progeny, this Court recommends finding that Plaintiff's attempt to add these claims one year later is unduly delayed.

## II.     Plaintiff's Proposed Amendments are Unduly Prejudicial

The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party. Courts typically find prejudice only when the amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006) (quoting *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir. 1971)). Most often, this occurs when the amended claims arise out of a subject matter different than that set forth in the complaint and raise significant new factual issues. *Id.*

Discovery typically is not permitted in administrative review cases. *See Sierra Club v. United States Dep't of Energy*, 26 F. Supp.2d 1268, 1271 (D. Colo. 1998). In fact, at the inception of this action, the parties agreed that no discovery was necessary in this case, since the Complaint requires only a review of the administrative record. *See* Scheduling Order, docket #10. However, the Court agrees with Defendants (and the Plaintiff does not dispute) that Plaintiff's proposed

amendments would require more than limited discovery in this matter. Defendants claim that the time necessary to complete this discovery would subject them to a risk of default by an employer seeking to avoid paying an award made against it. Docket #22 at 5. Plaintiff does not refute Defendants' claim except to state generally that "Defendants have produced no evidence of prejudice." Docket #28 at 4.

Here, where Defendants seek to affirm an award made in its favor, have concerns regarding the dissipation of Plaintiff's assets, and rely on a statute (the MPPAA) that encourages "speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute," *see Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001), the Court recommends finding that Defendants would be unduly prejudiced by the addition of Plaintiff's proposed amendments.

### III.    Plaintiff's Proposed Amendments are Futile

Even if the District Court were to find that Plaintiff's proposed amendments are neither unduly delayed nor unduly prejudicial, this Court recommends finding that the addition of the amendments would be futile.

The heart of the MPPAA is its requirement that employers withdrawing from the plan pay a substantial withdrawal liability sum to the pension plan. *Carl Colteryahn Dairy Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 116 (3d Cir. 1988). An employer's withdrawal liability is essentially equal to the employer's allocable share of the plan's unfunded vested benefits, subject to certain adjustments. *Id.; see also* 29 U.S.C. § 1381(b). An employer's allocable share of these benefits is based primarily on the employer's proportionate share of contributions made to the fund. *See e.g.* 29 U.S.C. § 1391(b). The MPPAA provides a series of complex formulas by which a withdrawal liability sum is to be calculated. *Id.* Given the complexity

of the calculations and the many technical issues that must be addressed to assess a bottom line liability, *see* 29 U.S.C. §§ 1381- 1399, Congress has created a system of arbitration designed to resolve most disputes over such determinations. *See* 29 U.S.C. § 1401 (1982). That is, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of [title 29] **shall** be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added).

Plaintiff's allegation that, because the withdrawal liability calculation did not incorporate future expected recoveries, "[t]he withdrawal liability assessed against Ludvik is greater than necessary to compensate the Fund for its unfunded vested benefits under MPPAA," simply <u>assumes</u> that it is proper to include future expected recoveries in the calculation of withdrawal liability. *See* docket #17 at 3. All of Plaintiff's new claims are premised on the "fact" that the Pension Plan expects to receive future recoveries, which, if received, would change the Plan's market value and, thus, result in a windfall to the Defendants.

Consequently, in deciding whether Plaintiff is entitled to setoff [or its other proposed remedies] in this case, the Court will be required to determine whether expected future recoveries are properly considered in the computation of withdrawal liability.[4] Such determination necessitates an analysis of the "complexity of the calculations" that are addressed in sections 1381 through 1399 of the MPPAA. Pursuant to section § 1401(a)(1), this Court believes that Plaintiff's proposed amendments arise under the MPPAA and must be resolved by arbitration.

Thus, the Court recommends finding that Plaintiff's proposed amendments are not properly

---

[4]The determination of the equitable remedies requested by Plaintiff would be similar to a determination in an employment case in which lost wages are awarded as to whether the defendant employer is entitled to set off such award by unemployment compensation or social security disability payments made in the interim to the plaintiff employee. The Court must first analyze the relevant statutory and case law to determine whether a setoff is proper before it can decide the amount that may be set off.

before this Court, but must be addressed in an arbitration proceeding. Plaintiff suggests that, rather than deny the amendments altogether, the Court stay the litigation to allow the new claims to proceed to arbitration. Docket #28 at 6 (citing *Carl Colteryahn Dairy Inc.*, 847 F.2d at 124). However, here, unlike in *Colteryahn*, the undue delay and prejudice to Defendants in this matter weigh against allowing a stay of proceedings. Therefore, this Court recommends finding that Plaintiff's proposed amendments would not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and would be futile if brought in this litigation proceeding.

## CONCLUSION

Accordingly, for the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Leave to File Amended Complaint [filed August 12, 2008; docket #17] be **denied**. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[5]

Dated at Denver, Colorado this 18th day of September, 2008.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[5] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).